**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN WEISS,<br><br>                Plaintiff,<br><br>    v.<br><br>BIGBEAR.AI HOLDINGS, INC., PETER CANNITO, SEAN BATTLE, PAMELA BRADEN, RALUCA DINU, PAUL FULCHINO, JEFFREY HART, DOROTHY D. HAYES, AVI KATZ, KIRK KONERT, and AMANDA LONG,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Steven Weiss ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against BigBear.ai Holdings, Inc. ("BigBear" or the "Company") and the members of BigBear's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to combine the Company with Pangiam Intermediate Holdings, LLC ("Pangiam"), a direct, wholly owned subsidiary of Pangiam Ultimate Holdings, LLC ("Seller") (the "Proposed Transaction").

2. On November 4, 2023, BigBear, Pangiam, Seller, and the Company's wholly owned subsidiaries, Pangiam Merger Sub, Inc. ("Merger Sub") and Pangiam Purchaser, LLC ("Purchaser") entered into an Agreement and Plan of Mergers (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, BigBear and Pangiam will combine, with all equity securities of Pangiam converted into the right to receive a number of shares of BigBear common stock equal to $70,000,000 in the aggregate (based on a price per share of BigBear common stock of $1.3439 which represents the 20-day VWAP for BigBear common stock ending on the trading day immediately prior to the date of the Merger Agreement).

3. Under the Merger Agreement, BigBear is required to issue additional shares of BigBear common stock (the "Share Issuance"). As a New York Stock Exchange ("NYSE") listed company, BigBear is required by NYSE listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon BigBear shareholders voting to approve the proposed Share Issuance.

4. On January 29, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that BigBear stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information, including with respect to: (i) the financial projections for Pangiam and the pro forma company; (ii) the financial analyses underlying the special committee of the Board's ("Special Committee") financial advisor Ernst & Young Investment Advisers LLP's ("EY") fairness opinion; and (iii) potential conflicts of interest faced by EY.

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as BigBear stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

6. The special meeting for BigBear stockholders to vote on the Proposed Transaction is currently scheduled for February 27, 2024.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and BigBear's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.  Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  BigBear's common stock trades on the NYSE, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of BigBear common stock.

11. Defendant BigBear is a Delaware corporation, with its principal executive offices located at 6811 Benjamin Franklin Drive, Suite 200, Columbia, Maryland 21046. BigBear's shares trade on the NYSE under the ticker symbol "BBAI."

12. Defendant Peter Cannito ("Cannito") has been Chairman of the Board and a director of the Company at all relevant times. Defendant Cannito is an Operating Partner of AE Industrial Partners, LP ("AEIP"), the controlling equityholder of Pangiam which holds 65.1% of the Company's outstanding common stock.

13. Defendant Sean Battle has been a director of the Company at all relevant times.

14. Defendant Pamela Braden ("Braden") has been a director of the Company at all relevant times. Defendant Braden is an Operating Partner of AEIP.

15. Defendant Raluca Dinu has been a director of the Company at all relevant times.

16. Defendant Paul Fulchino has been a director of the Company at all relevant times.

17. Defendant Jeffrey Hart ("Hart") has been a director of the Company at all relevant times. Defendant Hart is a Partner at AEIP.

18. Defendant Dorothy D. Hayes has been a director of the Company at all relevant times.

19. Defendant Avi Katz has been a director of the Company at all relevant times.

20. Defendant Kirk Konert ("Konert") has been a director of the Company at all relevant times. Defendant Konert is a Managing Partner at AEIP.

21. Defendant Amanda Long has been Chief Executive Officer and a director of the Company at all relevant times.

22. Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. BigBear is a leading provider of artificial intelligence ("AI")-powered military and business intelligence solutions. The Company's AI-powered military and business intelligence solutions are leveraged across its Cyber & Engineering and Analytics business segments in three core markets: global supply chain and logistics; autonomous systems; and cybersecurity. The Company's Cyber & Engineering segment provides high-end technology and management consulting services, focusing on cloud engineering and enterprise information technology, cybersecurity, computer network operations and wireless, systems engineering, as well as strategy and program planning. The Analytics segment provides high-end technology and consulting services, focusing on big data computing and analytical solutions, including predictive and prescriptive analytics solutions. BigBear's customers include federal defense and intelligence agencies, manufacturers, third party logistics providers, retailers, healthcare, and life sciences organizations.

### The Proposed Transaction

24. On November 6, 2023, BigBear announced that it had entered into the Proposed Transaction, stating, in relevant part:

> COLUMBIA, MD.— November 6, 2023 — BigBear.ai (NYSE: BBAI), a leading provider of AI-enabled business intelligence solutions, today announced a definitive merger agreement to acquire Pangiam Intermediate Holdings, LLC (Pangiam), a leader in Vision AI for the global trade, travel, and digital identity industries, for approximately $70 million in an all-stock transaction. The combined company will create one of the industry's most comprehensive Vision AI portfolios, combining Pangiam's facial recognition and advanced biometrics with BigBear.ai's computer vision capabilities, positioning the company as a foundational leader in one of the fastest growing categories for the application of AI. The proposed acquisition is expected to close in the first quarter of 2024, subject to customary closing conditions, including approval by the holders of a majority of BigBear.ai's outstanding common shares and receipt of regulatory approval.

5

Today, over 20 US Government Defense and Intelligence customers and 160 Commercial enterprises leverage BigBear.ai's predictive analytics capabilities. The Pangiam acquisition will expand BigBear.ai's customer base and service offerings to major airlines, airports and identity-verification companies, and significantly increase its contract portfolio with customers at the Department of Homeland Security and U.S. Customs and Border Protection.

"Vision AI has long been considered the holy grail of applied AI because of its potential to perceive and interact with the world in a human way," said Mandy Long, CEO, BigBear.ai. "BigBear.ai's acquisition of Pangiam will create one of the industry's most comprehensive Vision AI portfolios, combining capabilities in support of both localized and global scale environments. The integration of these two businesses will result in significant operational benefits for our shared customers."

"The combination of Pangiam and BigBear.ai will position our combined companies to vault solutions currently available in market," said Kevin McAleenan, CEO of Pangiam. "With our shared mission and a complementary customer base and product set, our teams will be able to pursue larger customer opportunities, enhance our technology development, and accelerate our growth. We're thrilled to soon join the BigBear.ai team."

**The Materially Incomplete and Misleading Proxy Statement**

25.     On January 24, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that BigBear stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Pangiam and the pro forma company; (ii) the financial analyses underlying the fairness opinion provided by the Special Committee's financial advisor EY; and (iii) potential conflicts of interest faced by EY.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Pangiam and the Pro Forma Company*

26.     The Proxy Statement fails to disclose material information concerning the financial projections for Pangiam and the pro forma company.

27. Critically, the Proxy Statement fails to disclose the unlevered free cash flows that each of Pangiam's "Government Business" and "Commercial Business"[1] were forecasted to generate, and the unlevered free cash flows related to recurring cost reductions and non-recurring incremental costs that the Proposed Transaction was forecasted to generate (the "Synergies"), during the period from October 25, 2023 to December 31, 2023 through the end of calendar year 2027, relied upon by the Special Committee's financial advisor in connection with its respective discounted cash flow analyses of Pangiam and the Synergies. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[2] The unlevered free cash flows formed the bases of the discounted cash flow analyses of Pangiam and the Synergies performed by EY in connection with its fairness opinion. *See* Proxy Statement at 39 ("EY conducted a sum-of-the-parts discounted cash flow analysis for the purpose of calculating an implied enterprise value range for Pangiam based on the Financial Projections."), 40 ("EY calculated the unlevered free cash flows, as of October 25, 2023, that each of the Government Business and the Commercial Business was forecasted to generate during the period from October 25, 2023 to December 31, 2023 through the end of calendar year 2027 based upon the Financial Projections."), *id.* ("EY also calculated the unlevered free cash flows related to recurring cost reductions and non-recurring incremental costs

---

[1] The "Government Business" is defined as Pangiam's development, security, and operations services supporting U.S. Federal Government programs. Proxy Statement at 39. The "Commercial Business" is defined as Pangiam's business of providing facial recognition, object detection software subscriptions, licenses, training, implementation, and consulting services. *Id.*
[2] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the DCF method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the DCF method to be the preeminent method of valuation).

that the Mergers were forecasted to generate (the 'Synergies') during the period from October 25, 2023 to December 31, 2023 through the end of calendar year 2027 based upon the Synergy Information.").

28. The Proxy Statement includes a summary of certain of Pangiam management's financial projections, as adjusted by BigBear management, and certain estimated cost synergies for calendar years 2023 through 2027. *See id.* at 58. Yet, this summary fails to include the most important projections – Pangiam's unlevered free cash flows and the unlevered free cash flows based upon the Synergies. The Proxy Statement further fails to disclose how the unlevered free cash flows were calculated and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on page 46 and the summary of EY's *Discounted Cash Flow Method* of Pangiam and the Synergies set forth on pages 39-40 of the Proxy Statement incomplete and misleading, because the Proxy Statement provides a materially incomplete and misleading valuation picture of Pangiam and the combined company.

29. In addition, the Proxy Statement fails to disclose a summary of the "Forecasts" and "Estimated Synergies" prepared by BigBear management and reviewed at an August 14, 2023 Audit Committee meeting, as well as a summary and quantification of the changes made to the August 14, 2023 "Forecasts" and "Estimated Synergies" to arrive at the financial projections relied upon by EY in connection with rendering its fairness opinion. *See id.* at 32.

30. Moreover, the Proxy Statement fails to disclose all line items underlying Pangiam's: (i) Governmental EBITDA; and (ii) Commercial EBITDA.

*Material Misrepresentations and/or Omissions Concerning EY's Financial Analyses*

31. The Proxy Statement fails to disclose material information concerning EY's financial analyses.

32. With respect to EY's sum-of-the-parts *Discounted Cash Flow Method* analysis of Pangiam, in addition to the unlevered free cash flows, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for each of the Government Business and Commercial Business; (ii) normalized EBITDA of the Government Business at the end of 2027, used to calculate the terminal values; and (iii) the inputs and assumptions underlying the discount rates ranging from 11.5% to 12.5% for the Government Business and 30.0% to 35.0% for the Commercial Business.

33. With respect to EY's *Discounted Cash Flow Method* analysis of the Synergies, in addition to the unlevered free cash flows, the Proxy Statement fails to disclose a quantification of: (i) the terminal values for the Synergies; and (ii) the inputs and assumptions underlying the discount rates ranging from 20.0% to 30.0%.

34. With respect to EY's *Guideline Public Company Method* analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics of the companies observed.

35. With respect to EY's *Guideline Transactions Method* analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics of the transactions observed.

*Material Misrepresentations and/or Omissions Concerning EY's Potential Conflicts of Interest*

36. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by EY.

37. Specifically, the Proxy Statement fails to disclose the amount of compensation EY has received or expects to receive for providing "certain audit, tax, transaction advisory, business consulting and other advisory (not involving audit or tax) services to [BigBear] and its affiliates[.]" *Id.* at 44.

9

38. In sum, the omission of the above-referenced information renders statements in the "Certain Forecasts," "BBAI Management Forecasts," "Estimated Cost Synergies, "Opinion of BBAI's Financial Advisor," and "Background of the Mergers" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of BigBear will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and BigBear**

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. BigBear is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of BigBear within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of BigBear and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

51. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of BigBear, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 8, 2024                                            **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*